## Consolidation Coal Co. et al. v. Mills et al.

Dec. 10, 1943.

Harry L. Moore and Edward C. O'Rear for appellants.

Wheeler & Wheeler for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This is an appeal from a judgment of the Johnson Circuit Court reversing a decision of the Workmen's Compensation Board denying compensation to the de-

pendents of Walter Mills, an employee of the appellant Company, who died on August 27, 1940. The judgment of the Circuit Court was based solely upon a disagreement with the Board's conclusions as to the facts established by the testimony; and, although several grounds for reversal are urged, we deem it necessary to consider only one, namely, that the Board's finding was supported by competent substantial testimony of probative value, and was therefore immune to attack in the courts.

The opinion of the Referee, Hon. W. H. Lewis, approved and adopted by the full Board on review, so clearly and succinctly sets forth the facts disclosed by the testimony, and the Board's conclusions with respect thereto, that we quote from it the following:

"It is claimed that deceased sustained two accidental injuries, both of which contributed to and did bring about his death. (1) That sometime in July 1940, the exact date not being proven, he skinned and bruised his back against the top of the mine and from which injury he was off from work for about one week. (2) That on August 2, 1940, while he was prying down coal from top of mine, his feet slipped and he fell injuring his neck causing something to tear loose.

"Only one witness has testified he was present when it is claimed deceased sustained the first injury. His brother, Thurman Mills, says that while they were working together on a night in July 1940 in room No. 9 on 8 left section, 6th north of the mine, deceased skinned and bruised his back against the top of the mine knocking the hide off and that a big blue knot raised up on his back; that he was treated by Dr. Shields, Dr. Picklesimer and Dr. W. M. Keith for what they called a carbuncle, and that he was off from work for about a week. Witness says that injury occurred in 1940. But Dr. Shields, Picklesimer and Keith testify that they treated Walter Mills from June 17 to June 24, 1940 for a boil on his back, and not for any injury Mills claimed to have received. Records kept by defendant's mine foreman show that deceased was off from work from June 14 to June 24th, 1940; that when he returned he worked regularly during the month of July and up until August 3rd. It is also shown by the records that the witness, Thurman Mills, transferred to another section of the mine on June 11th, and never after that date worked on the same section with his brother, Walter Mills. Each

of the three doctors who first treated deceased state that at the time he came to them he was suffering with a boil on his back, and that he made no complaint, or gave them any history of having been injured in Defendant's mine. Each testify they found no evidence of any injury. Dr. W. N. Keith gave to deceased a written statement at his request to show why he was off from work, and could present to his employer an excuse for being off. This statement relates that Dr. Keith 'had opened a boil on the back of Walter Mills, and that he had done one dressing and had supplied four more dressings to be done at his home.' This statement was delivered to Walter Mills and carried by him to Dr. Shields when he examined him and gave him a return slip to work. When he returned to work, he stated to his foreman that he had been sick and had been treated for a boil on his back by Dr. Shields. Statements to other parties appear in the record that he was treated for a boil on his back, and made no complaint that he had sustained an injury in the mine. The weight and preponderance of the evidence is against the claim that deceased sustained an injury to his back, or skinned his back against the top of the mine as testified to by his brother, Thurman Mills. The records, acts and declarations of deceased, together with the testimony of the attending physicians convince the board that deceased suffered no injury to his back while working in mines of defendant as claimed by the plaintiffs.

"Considering now the alleged injury to deceased's neck, which is claimed he sustained on the night of August 2, 1940. If there is any eye witness to this alleged accident or injury, the evidence before us does not disclose such fact. The evidence as to this second injury consists mainly of what deceased said about it himself."

(Here follows extracts from the testimony of the deceased's widow, his brother, and two of his co-workers relative to statements made by the deceased concerning his alleged neck injury.)

The Referee then proceeds:

"It is our opinion that these alleged statements and declarations of Walter Mills as to how he hurt his neck are incompetent. In the first place, they are purely hearsay, and second, they cannot be considered under the res gestae rule, because, they were not made contemporaneously in point of time with the alleged injury.

They are nothing more than narrative of a past transaction. The element of spontaneity is also lacking in the alleged declarations. They are too far removed in point of time and place to be considered as a part of the res gestae.

"Those declarations were permitted to be recorded at the hearing upon the theory that the compensation act permits liberality in the investigation of claims which come before the Board. But, when the evidence is all in, as was said in the case of Valentine v. Weaver, 191 Ky. 37, 228 S. W. page 1036 'it must be sifted and assorted. The competent separated from the incompetent; and out of the testimony there must come some reliable and substantial evidence, as understood by the common-law rules of evidence upon which a verdict must rest.' Having followed that rule in this case, we find that the plaintiffs have not shown by competent evidence that Walter Mills sustained a personal injury by an accident which arose both out of and in the course of his employment with the defendant, or that his death resulted from such injuries or was the natural or probable consequence thereof. They have failed to sustain the burden which rested upon them.

"And having considered the evidence of all the doctors who treated the deceased during his last sickness, it is our further opinion and finding of fact, that Walter Mills death was the result of a staphylococcus infection of the blood stream (Septicemia) which developed from a boil or an abscess on his back which appeared on or about June 17, 1940."

In the light of the foregoing, it is difficult to conceive how the Circuit Judge could have arrived at his conclusions otherwise than by discrediting the testimony of appellants' witnesses and attributing verity and probative value to that given in behalf of the claimants, regardless of its competency. But, however this may be, the Board, by KRS 342.285, as construed by innumerable decisions of this Court, is vested with the final power to determine the weight to be given relevant evidence; and if that adduced by appellants was true, it is obvious that the claimants' case was without basis in fact.

Judgment reversed with directions to dismiss the petition.